IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| WILLIE J. STEVENS, | ) | |
|     Plaintiff, | ) | Civil Action No. 7:21-cv-00570 |
| | ) | |
| v. | ) | |
| | ) | |
| HAROLD CLARKE,[1] *et al.*, | ) | By: Elizabeth Dillon |
|     Defendants. | ) | United States District Judge |

**MEMORANDUM OPINION**

Plaintiff Willie J. Stevens, proceeding *pro se*, filed this action pursuant to 42 U.S.C. § 1983. Stevens's complaint names two defendants: (1) the Director of the Virginia Department of Corrections ("VDOC"), who defendants have identified as Harold Clarke; and (2) correctional officer L. Perez. Stevens's claims stem from events that occurred while he was housed at Green Rock Correctional Center ("GRCC"). Subsequent to filing the lawsuit, he was transferred to Keen Mountain Correctional Center ("KMCC").

Pending before the court is a motion to dismiss filed by both defendants in which they seek dismissal of all claims against them. (Dkt. No. 17.) Stevens filed a response in opposition (Dkt. No. 20), and the time for filing any reply has expired. Thus, that motion is ripe for disposition. Stevens also has filed a motion to appoint counsel (Dkt. No. 21), and defendants have filed a motion to stay discovery (Dkt. No. 24).

For the reasons set forth in this opinion, the motion to dismiss will be granted and the case dismissed. The other two motions will be denied as moot in light of the dismissal.

---

[1] Stevens named "Director of the Virginia Department of Corrections" as the first defendant. As defendants note in their memorandum in support of the motion to dismiss (Dkt. No. 18 at 1 n.1), that individual is Harold Clarke, who will be substituted as the first defendant. The Clerk will be directed to update the docket accordingly.

I.   BACKGROUND

A.   **Factual Background**[2]

Stevens's complaint does not contain many facts, although some additional facts can be gleaned from the written grievances he filed and attached to his complaint. It appears that at some unspecified date in early August 2021, Stevens had reported Perez to the "sexual abuse hotline" for "sexual misconduct" toward Stevens. (Compl. 2; *see also* Ex. A to Compl., Dkt. No. 1-1, at 1 (Stevens's grievance document stating that he had reported misconduct by Perez "a few weeks" before August 20).) On August 20, 2021, Perez came into the Restricted Housing Unit, where Stevens was housed. Speaking loudly enough that offenders in four nearby cells could hear him, Perez called Stevens "a dirty Indian," said that Stevens "couldn't even snitch on [Perez] right," and also called Stevens a "cheese[-]eating rat." (Compl. 2.) Stevens alleges that the comments were unprofessional, showed racial discrimination, and put Stevens in harm's way by calling Stevens a "rat." Stevens alleges that he is a known gang member and he could be "killed if it were proven that I snitched or told on anyone." (*Id.*) He now is fearful that someone may try to hurt him because of Perez's statements.

In what is apparently the basis for a separate claim, Stevens further alleges that Perez "never made a statement and was never even interviewed during the [i]nstitutional grievance procedure." (*Id.*)

B.   **Stevens's Claims**

Stevens lists what he describes as three separate claims. First, he claims that Perez violated his Fourteenth Amendment rights, denying him "liberty" and "equal protection of the laws," when Perez accused him of being a rat and said Stevens could not "snitch" correctly on

---

[2] The facts are taken from Stevens's complaint for purposes of ruling on the motion to dismiss.

2

him, which could result in Stevens being harmed by other inmates.

Second, he claims that Perez violated his Eighth Amendment rights by his comments and also "discriminated" against Stevens's race.

The third "claim" simply states that Stevens "has no plain, adequate, or complete remedy at law to redress the wrongs" and that he has been and will continue to be injured by the defendants' conduct absent some relief.

Liberally construing his claims, the court believes Stevens is asserting an Eighth Amendment claim and a Fourteenth Amendment claim alleging a violation of his rights under the Equal Protection Clause. The court also considers the possibility that he is asserting some sort of due process claim based on the institutional grievance procedure and a retaliation claim. Each claim will be addressed in turn.

## II.  DISCUSSION

**A.  Motion to Dismiss**

A motion to dismiss under Rule 12(b)(6) tests the complaint's legal and factual sufficiency. *See Ashcroft v. Iqbal*, 556 U.S. 662, 677–80 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554–63 (2007); *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008).[3]  To withstand a Rule 12(b)(6) motion, a pleading must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678.  In considering the motion, the court must construe the facts and reasonable inferences "in the light most favorable to the nonmoving party." *Massey v. Ojaniit*, 759 F.3d 343, 347 (4th Cir. 2014).  A court need not accept as true a complaint's legal conclusions, "unwarranted inferences, unreasonable conclusions, or arguments." *Giarratano*, 521 F.3d at 302. *Pro se* complaints are

---

[3] Unless otherwise noted, the court omits internal citations, alterations, and quotation marks throughout this opinion. *See United States v. Marshall*, 872 F.3d 213, 217 n.6 (4th Cir. 2017).

3

afforded a liberal construction. *Laber v. Harvey*, 438 F.3d 404, 413 n.3 (4th Cir. 2006).

**B. Claims Against Clarke**

"To state a claim under § 1983[,] a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *Loftus v. Bobzien*, 848 F.3d 278, 284–85 (4th Cir. 2017).

Although Stevens names Clarke as a defendant, he identifies nothing that Clarke did or failed to do that violates his constitutional rights. Liability under § 1983 is "personal, based upon each defendant's own constitutional violations." *Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001). Thus, a § 1983 claim requires factual detail about each defendant's personal involvement. *See Wilcox v. Brown*, 877 F.3d 161, 170 (4th Cir. 2017) (explaining that liability will lie under § 1983 only "where it is affirmatively shown that the official charged acted personally" in the violation of plaintiff's rights and affirming dismissal of claim where plaintiff did not allege personal involvement by defendant) (quoting *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977)). "[T]here is no respondeat superior liability under § 1983." *Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978)). Because Stevens has failed to set forth any way in which Clarke was personally involved in any violation of his rights, all claims against Clarke fail as a matter of law.[4]

---

[4] To the extent that Stevens is attempting to proceed on a theory of supervisory liability, he can plead such a claim by alleging facts sufficient to show (1) that the defendant "had actual or constructive knowledge that [a] subordinate was engaged in conduct that posed 'a pervasive and unreasonable risk' of constitutional injury to citizens like the plaintiff"; (2) that the defendant's "response to that knowledge was so inadequate as to show 'deliberate indifference to or tacit authorization of the alleged offensive practices'"; and (3) that there was an "affirmative causal link" between the defendant's conduct and plaintiff's "particular constitutional injury." *Wilkins v. Montgomery*, 751 F.3d 214, 226 (4th Cir. 2014) (quoting *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994)). The factual allegations in his complaint do not mention Clarke at all, and he does not allege facts to establish any of those three elements.

## C. Claims Against Perez

As noted above, the court construes the complaint as asserting four claims: (1) a claim that Stevens's Eighth Amendment rights were violated by Perez's comments; (2) a claim that his Fourteenth Amendment right to equal protection was violated when Perez called him a "dirty Indian" in conjunction with the other comments made to him; (3) a claim that his Fourteenth Amendment right to due process was violated when Perez allegedly was not interviewed during the grievance process; and (4) a retaliation claim alleging that Perez's comments were made to retaliate against Stevens for reporting Perez for sexual misconduct.

### 1. Eighth Amendment Claim

To state a violation of the Eighth Amendment, Stevens is required to set forth factual allegations showing either a "nontrivial" use of force, *Wilkins v. Gaddy*, 559 U.S. 34, 39 (2010), or a showing of prison conditions that demonstrate a "significant physical or emotional harm, or a grave risk of such harm," *Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995). There is no allegation of force here, trivial or otherwise. Further, verbal harassment alone—even including the use of racial epithets—while obviously unprofessional, does not violate the Eighth Amendment. *Henslee v. Lewis*, 153 F. App'x 178, 179 (4th Cir. 2005) ("Mere threats or verbal abuse by prison officials, without more, do not state a cognizable claim under § 1983."). *See also Morva v. Johnson*, No. 7:09-cv-00515, 2011 WL 3420650, at *7 (W.D. Va. Aug. 4, 2011) (collecting authority for the proposition that "[v]erbal harassment or idle threats to an inmate, even to an extent that it causes an inmate fear or emotional anxiety," do not give rise to a due process violation or an Eighth Amendment violation). Thus, Stevens fails to state a constitutional violation based on Perez's alleged threats, and any § 1983 claim based on those threats must be dismissed.

The only other alleged conduct by Perez is that he allegedly "encourage[ed] other

offenders to do harm to Stevens" by calling him a "rat" and saying he couldn't even snitch properly on Perez.

To be sure, the Eighth Amendment obligates prison officials to take reasonable precautions to "protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). To hold a prison official liable under § 1983 for a failure to protect, a plaintiff must establish that: (1) he was "incarcerated under conditions posing a substantial risk of serious harm" and (2) the defendant prison official had a "sufficiently culpable state of mind," one of "deliberate indifference." *Farmer*, 511 U.S. at 834. Notably, Stevens has not contended that any inmates in fact attacked him; he was merely worried about such an attack. The Fourth Circuit has stated that a claim that a jail employee incited other inmates to attack him, where he was not attacked, did not state a cognizable claim under § 1983. *Henslee*, 153 F. App'x at 179.

Courts also have recognized that, in certain circumstances, an Eighth Amendment claim can be premised on the disclosure of specific information to another inmate (such as a prison guard telling other inmates that the plaintiff was a "snitch"), even where an attack has not occurred. *See, e.g.*, *Benefield v. McDowall*, 241 F.3d 1267, 1271 (10th Cir. 2001) (so holding and collecting authority for the proposition that "labeling an inmate a snitch has the potential for great harm and may violate constitutional guarantees"); *Cullen v. Somerset Cty.*, No. CIV.A. WMN-10-0055, 2011 WL 2066553, at *6 (D. Md. May 25, 2011) ("Where prison officials or personnel have intentionally caused inmates to be identified as informants or snitches, courts have consistently found Eighth Amendment violations.").

Stevens, however, states that Perez told inmates he had "snitched" *on Perez*, not on other inmates. And there is no factual matter in the complaint alleging that filing complaints about correctional officers—which many inmates do openly—would cause other inmates to want to

6

harm him, or to believe he would report *inmates* to prison officials. Moreover, he has not alleged any facts to show that Perez knew that his comments would place Stevens at a "substantial risk of serious harm" and was deliberately indifferent to that risk. He simply says Perez complained to him and called Stevens names because he had reported Perez, and he did so within earshot of other inmates.

In short, Stevens has failed to identify a specific danger that "is facially concrete and plausible enough to satisfy basic pleading standards." *See Brown v. Narvais*, 265 F. App'x 734, 736 (10th Cir. 2008) ("We . . . do not hold that disclosures of this sort always in fact create an actionable danger to the inmate, regardless of circumstances that might materially affect the consequences of the disclosure, such as protective action by prison authorities or other contingencies that could negate the potential danger involved. We hold only that allegations of a prison officer's deliberate disclosure of dangerous information about an inmate's status are sufficient to state a claim under the Eighth Amendment provided the alleged danger is facially concrete and plausible enough to satisfy basic pleading standards."). In this circumstance, and on the facts pled, Perez's actions do not rise to the level of an Eighth Amendment violation. This claim must be dismissed.

   **2. Equal Protection**

The court also construes Stevens's complaint to be asserting an equal protection claim based on race. Racially derogatory comments such as the alleged statements made by Perez are inappropriate and, as Stevens suggests "to say the least unprofessional." (Compl. 2.) As noted, though, such comments—without more—do not state a constitutional violation. *Henslee*, 153 F. App'x at 179; *Carter v. Morris*, 164 F.3d 215, 219 n.3 (4th Cir. 1999); *see also Caballero v. Boney*, No. 3:16-cv-151-FDW, 2018 WL 2292764, at * 3 (W.D.N.C. May 18, 2018) (explaining that "conclusory allegations of [racial] discrimination are insufficient to state a claim

under § 1983").

Moreover, although Stevens uses the word "equal protection" in his complaint, he does not allege facts sufficient to state an equal protection claim. The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. The Equal Protection Clause thus directs that "all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1982).

To prove an equal protection claim, a litigant "must first demonstrate that he has been treated differently from others with whom he is similarly situated." *Veney v. Wyche,* 293 F.3d 726, 730 (4th Cir. 2002) (quoting *Morrison v. Garraghty,* 239 F.3d 648, 654 (4th Cir. 2001)). Two groups of persons are "similarly situated" only if they "are similar in all" relevant respects. *Van Der Linde Housing, Inc. v. Rivanna Solid Waste Auth.*, 507 F.3d 290, 293 (4th Cir. 2007). Once such a showing is made, then the court will determine "whether the disparity in treatment can be justified under the requisite level of scrutiny." *Veney*, 293 F.3d at 731 (quoting *Morrison*, 239 F.3d at 654).

Stevens alleges that he was discriminated against based on his race, apparently by Perez's calling him a "dirty Indian." But he also specifically attributes Perez's conduct to Stevens having filed a complaint against him. And he alleges no facts to suggest that other inmates of different races who also had filed complaints against Perez (or any other officer) were treated differently. In the absence of any such facts, Stevens has not pled an equal protection violation.

### 3. Due Process

The sole allegation Stevens offers in potential support of a due process claim is that Perez never made a statement and was never interviewed as part of the institutional grievance procedure. Even if true, that failure does not implicate a constitutionally-protected property or

liberty interest so as to trigger the protections of the Due Process clause. A failure to properly investigate a grievance, even if it were shown to violate some prison procedure or rule, does not give rise to a constitutional claim. Indeed, the Fourth Circuit held in *Adams v. Rice*, 40 F.3d 72 (4th Cir. 1994), and reiterated more recently in *Booker v. South Carolina Department of Corrections*, 855 F.3d 533 (4th Cir. 2017), that "inmates have no constitutional entitlement or due process interest in access to a grievance procedure." *Id.* at 541; *see Adams*, 40 F.3d at 75 ("The Constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by a state."). Relying on *Adams*, district courts, including this one, have held that a prison official's failure to comply with a grievance procedure is not actionable under § 1983. *E.g.*, *Brown v. Va. Dep't of Corr.*, No. 6:07-CV-33, 2009 WL 87459, at *13 (W.D. Va. Jan. 9, 2009) ("[T]here is no liability under § 1983 for a prison administrator's response to a grievance or appeal."); *Oliver v. Gray*, No. 7:09-CV-00004, 2009 WL 366150, at *2 (W.D. Va. Feb. 12, 2009), *aff'd*, 360 F. App'x 417 (4th Cir. 2010) ("Because a state grievance procedure does not confer any substantive right upon prison inmates, a prison official's failure to comply with the state's grievance procedure is not actionable under § 1983."). Thus, any claim arising from a failure to interview Perez as part of the grievance process must be dismissed.[5]

### 4. Retaliation Claim

To succeed on his retaliation claim, Stevens must establish that "(1) he engaged in protected First Amendment activity, (2) the defendant took some action that adversely affected his First Amendment rights, and (3) there was a causal relationship between his protected

---

[5] The grievance documents attached to the complaint suggest that GRCC's Institutional Investigator, Lt. Warring, investigated Stevens's claims, filed a report about them, and determined that Stevens's allegations were unfounded. (Dkt. No. 1-1, at 4.) In response to that, Stevens said that he believes the investigation was "weak" and one-sided because the grievance did not state that Investigator Warring or anyone else obtained a statement from Perez. (*Id.* at 5.) Stevens has not named Warring as a defendant, but even if he had, any claim against Warring would fail for the reasons set forth in the text.

activity and the defendant's conduct." *Martin v. Duffy ("Martin II")*, 977 F.3d 294, 299 (4th Cir. 2020) (citing *Martin v. Duffy ("Martin I")*, 858 F.3d 239, 249 (4th Cir. 2017)). Notably, however, the Fourth Circuit has cautioned that courts must treat an inmate's claim of retaliation by prison officials "with skepticism." *Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir. 1996). Thus, conclusory allegations of retaliation are insufficient to survive dismissal. *Adams*, 40 F.3d at 74–75 (summarily dismissing retaliation claim as insufficient because it consisted merely of conclusory allegations and no facts to show retaliatory motivation).

As to the first element of the claim, prisoners have a "First Amendment right to be free from retaliation for filing a grievance" or making a report under PREA. *Booker*, 855 F.3d at 541 (grievance); *Roscoe v. Bentley*, No. 7:18-CV-00319, 2021 WL 4267716, at *12 (W.D. Va. Sept. 20, 2021) (PREA report). So, Stevens's reporting sexual misconduct by Perez is activity protected by the First Amendment.

For the second element, "a plaintiff suffers adverse action if the defendant's allegedly retaliatory conduct would likely deter a person of ordinary firmness from the exercise of First Amendment rights." *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 500 (4th Cir. 2005). Because the standard is objective, rather than subjective, the fact that a plaintiff has not, in fact, been deterred from continuing in his protected activity is a factor that the court can consider. *Id.* at 500 (noting that, although it is not dispositive, "the plaintiff's actual response to the retaliatory conduct provides some evidence of the tendency of that conduct to chill First Amendment activity").

Perez's alleged conduct in making the comments to Stevens is insufficient to deter a person of ordinary firmness from exercising his First Amendment rights. In *Mateo v. Fischer*, 682 F. Supp. 2d 423, 434 (S.D.N.Y. 2010), the court synthesized and summarized case law addressing whether a threat was sufficient to constitute an adverse action. It explained that

10

verbal threats of retaliation, unless they are sufficiently specific and direct, generally do not constitute an adverse action for purposes of a retaliation claim. So, for example, a threat that the plaintiff would have to "pay the consequences for filing a grievance" was not an adverse action, but the statement, "If you don't stop writing grievances, I'm going to break your f__kin' neck" was sufficient.

Here, even if Perez intended for it to be a threat to call Stevens a "rat" and say Stevens "snitched" on him in front of other inmates, such a statement is neither a specific nor a direct threat and cannot support a retaliation claim. *See also Torres v. Schafer*, No. 1:20cv257, 2020 WL 1861872, at *5 (W.D. Mich. Apr. 14, 2020) (finding that allegations of "petty verbal harassment" and "vague threats" were insufficient to show adverse action). Moreover, Perez's alleged did not deter Stevens which—although not dispositive—is a relevant consideration as to the second element. *See Constantine,* 411 F.3d at 500. Instead, Stevens promptly filed and pursued a grievance and then a lawsuit against Perez.

Because Stevens fails to allege facts to support the second element of a § 1983 retaliation claim, the court will also dismiss this claim.

### III. CONCLUSION

For the foregoing reasons, Stevens's complaint fails to state a claim against either defendant and must be dismissed. His motion to appoint counsel and defendants' motion to stay discovery will be denied as moot.

An appropriate order will be entered.

Entered: July 14, 2022.

/s/ Elizabeth K. Dillon
Elizabeth K. Dillon
United States District Judge